UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHY MAE HATFIELD,

    Plaintiff,

v.                                                                              Case No. 1:21-cv-342
                                                                           Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**OPINION**

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied her application for disability insurance benefits (DIB).

        On September 23, 2015, plaintiff protectively filed an application for DIB, alleging a disability onset date of November 15, 2013. PageID.189, 345-351, 390. Plaintiff identified her disabling conditions as high blood pressure, anxiety, diabetes and neuropathy. *Id*. Prior to applying for DIB, plaintiff completed a GED and had past relevant work as a hi-lo driver, battery assembler, order selector, and welding machine tender. PageID.65. Administrative Law Judge (ALJ) Kari Deming denied the application on March 22, 2018. PageID.189-200. On October 11, 2019, the Appeals Council remanded the case to an ALJ with instructions. PageID.206-209. After another administrative hearing, ALJ Michael S. Condon denied the application on March 25, 2020. PageID.49-67, 75-125. The 2020 decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

1

## I.    LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016). This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ's DECISION

Plaintiff's application for DIB failed at the fourth step of the evaluation. At the first step, the ALJ found that plaintiff met the insured requirements of the Social Security Act through June 30, 2017. PageID.51. The ALJ also found that plaintiff did not engage in substantial gainful activity from her alleged onset date of November 15, 2013, through her date last insured. *Id.* At the second step, the ALJ found that through the date last insured, plaintiff had severe impairments of right foot plantar fascial fibromatosis with first metatarsophalangeal osteoarthritis, diabetes mellitus, hypertension, mild coronary artery disease, anxiety, and depression. *Id*. At the third step, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that meet or equal the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.53.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she may only occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; and may never climb ladders, ropes, or scaffolds. Claimant may have no more than occasional exposure to extreme cold; no more than occasional exposure to fumes, odors, dusts, gases, and areas of poor ventilation; and may have no exposure to workplace hazards such as unprotected heights and dangerous moving machinery. Claimant may do no operation of motorized vehicles. Claimant can understand, remember, and apply information to perform simple tasks; is able to focus on and complete simple tasks and can make simple decisions; and can adapt to occasional changes in a routine work setting. Claimant may have no more than occasional contact with the general public.

PageID.55-56.

At step four, the ALJ found that through the date last insured, plaintiff was capable of performing past relevant work as a battery assembler. PageID.64. This work did not require the performance of work-related activities precluded by plaintiff's residual functional capacity

4

(RFC).  *Id*.  Despite having made this determination, the ALJ proceeded to Step five, where he made an alternative finding that through the date last insured, plaintiff could perform a significant number of unskilled jobs at the light exertional level.  PageID.65-66.  Specifically, the ALJ found that plaintiff could perform the requirements of occupations in the national economy such as assembler (175,000 jobs), machine tender (60,000 jobs), and clothing sorter (58,000 jobs).  PageID.66.  Accordingly, the ALJ determined that plaintiff was not under a disability, as defined in the Social Security Act, at any time from November 15, 2013 (the alleged onset date) through June 30, 2017 (the date last insured).  PageID.67.

### III. DISCUSSION

Plaintiff has raised two related errors on appeal.

**A. The ALJ erred by failing to properly evaluate the treating opinion evidence consistent with the regulations, Agency policy and Sixth Circuit precedent.**

**B. The ALJ's credibility assessment is generally defective because of the above error, and specifically so because he neglected to consider Plaintiff's stellar work history.**

Plaintiff contends that ALJ Condon did not assign proper weight to the October 11, 2017, opinion of her treating physician Diana Dillman, D.O.  PageID.951-960, 3127.[1]  Because plaintiff filed her application before March 27, 2017, the "treating physician rule" applies to the ALJ's decision.  *See* 20 C.F.R. § 404.1527.  Under this rule, a treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability.  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).  "In general, the opinions of treating physicians are

---

[1] Plaintiff cannot receive DIB unless she was disabled before her insured status expired on June 30, 2017. *See Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984) ("insured status is a requirement for an award of disability insurance benefits"). The Court notes that Dr. Dillman's opinion is not limited to the relevant time period (November 15, 2013 through June 30, 2017). Rather, the opinion addresses plaintiff's condition through October 11, 2017, more than three months after plaintiff's date last insured.  PageID.951-960.  "[P]ost-date-last-insured medical evidence generally has little probative value unless it illuminates the claimant's health before the insurance cutoff date." *Grisier v. Commissioner of Social Security*, 721 Fed. Appx. 473, 477 (6th Cir. 2018).

5

accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. § 404.1527(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

ALJ Condon addressed Dr. Dillman's opinion as follows:

> In October 2017, Dana Dillman, D.O., provided a physical functional capacity assessment of the claimant. Dr. Dillman opined that claimant would be off-task at least 25% of the workday, and absent at least four days a month on average. Dr. Dillman opined that claimant could sit for up to four hours in an eight-hour workday and could stand/walk at twenty-minute intervals due to pain. Dr. Dillman opined that claimant could occasionally carry up to ten pounds, and rarely up to twenty. Dr. Dillman opined that claimant could only occasionally reach, handle, and finger with her right upper extremity; and could frequently reach, handle, and finger with her left upper extremity. Dr. Dillman opined that claimant could occasionally use foot controls with her right foot, and frequently could do so with her left foot. Dr. Dillman further opined that claimant could never climb ladders, ropes, or scaffolds or balance; could occasionally climb ramps or stairs or rotate her head or neck; and could rarely crouch, crawl, stoop, or kneel. Dr. Dillman opined that claimant could occasionally operate vehicles; and should rarely be exposed to workplace hazards, extreme heat or cold, pulmonary irritants, or vibrations (Ex. 9F). The undersigned assigns very little weight to this opinion in that it is inconsistent with the evidence of record and the record as a whole, including the claimant's history of treatment and medications, the clinical examination findings, the objective medical studies, and the claimant's reported activities of daily living. The evidence does not support the extent of limitations in almost every regard as found by Dr. Dillman as evinced by largely mild to moderate clinical examination findings and objective medical studies, including Dr.

> Dillman's own examination findings (Exs. 4F/13-20, 124-127; 14F/542-546). Such inconsistencies suggest that Dr. Dillman relied quite heavily on the claimant's subjective report of symptoms and limitations, and that she may have uncritically accepted as true most, if not all, of what the claimant reported. Yet, as explained above, there exist good reasons for questioning the consistency of the claimant's subjective complaints.

PageID.62.

Based on the record in this case, ALJ Condon has given good reasons for assigning very little weight to Dr. Dillman's opinion. The ALJ gave two different reasons. First, the restrictions are not consistent with Dr. Dillman's own findings. This is a sufficient basis to meet the "good reasons" requirement for the weight assigned to Dr. Dillman's opinion.

Second, ALJ Condon found a lack of consistency in plaintiff's subjective complaints. With respect to plaintiff's subjective complaints, the ALJ found that:

> In reviewing the claimant's statements, the objective medical studies and clinical examination findings do not fully corroborate her alleged symptoms and limitations. For example, despite claimant's allegations that she is unable to walk or stand without difficulty, move her body freely, concentrate, remember, or successfully complete many activities of daily living, the record establishes that objective medical studies and clinical examination findings were mild to moderate overall, and the record reflects that the claimant has experienced at least some improvement with medications and other treatments. The claimant has also not presented for therapeutic treatment during the period under adjudication, and has not always followed all recommendations and instructions of treatment providers. This suggests that the symptoms may not have been as serious as has been alleged in connection with this application.
>
> The claimant has also described daily activities through the date last insured that are not limited to the extent one would expect given her allegations of disabling symptoms. These activities include caring for her basic personal hygiene, caring for her pets, doing dishes, doing laundry, housecleaning, preparing simple meals, driving, walking, shopping, occasionally bowling, and spending time with her boyfriend (Ex. 3E; Hearing Testimony). This indicates that the claimant's ability to perform daily activities has been somewhat greater than she alleges. Because of the foregoing inconsistencies, the undersigned therefore finds that the claimant's statements concerning the intensity, persistence, and limiting effects of her alleged symptoms through the date last insured are not fully supported by the record (see SSR 16-3p).

PageID.60.

While plaintiff frames the issue as one of "credibility," that term has been eliminated from Social Security Administration (SSA) policy. *See* SSR 16-3p, 2017 WL 5180304 at *2 ("we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term"). As reflected in the second claim of error, the gist of plaintiff's claim is that the ALJ failed to address her stellar and exemplary work history. *See* Plaintiff's Brief (ECF No. 11, PageID.3139-3140); PageID.380-381. The regulations provide that in evaluating the intensity and persistence of a claimant's symptoms, "[w]e will consider all of the evidence presented, including information about your prior work record." *See* 20 C.F.R. § 404.1529(c)(3). The record reflects that plaintiff's most significant amount of earnings occurred within the 15 years prior to her alleged disability onset date. PageID.380-381.[2] The ALJ considered plaintiff's employment, both at the administrative hearing and in his decision. PageID.64-65, 79-85. In this regard, an ALJ is not required to explicitly discuss a claimant's work history. *Dutkiewicz v. Commissioner of Social Security*, 663 Fed. Appx. 430, 433 (6th Cir. 2016).

The ALJ's decision is legally sound and supported by substantial evidence. Accordingly, plaintiff's claims of error are denied.

### IV. CONCLUSION

For these reasons, the Commissioner's decision will be **AFFIRMED**. A judgment consistent with this opinion will be issued forthwith.

Dated: September 21, 2022 /s/ Ray Kent
RAY KENT
United States Magistrate Judge

---

[2] Plaintiff does not address her work record in any detail. Plaintiff's record indicates her first employment was in 1979. PageID.380-381. During eleven years (1979-1981, 1984-1990, and 2010), plaintiff had either no earnings or less than $1,000.00 in earnings. *Id.* During seven years (1982-1983, 1992-1994, 1997, and 2011), plaintiff earned less than $10,000.00. *Id.*